Jonathan L. Flaxer  
GOLENBOCK EISEMAN ASSOR  
  BELL & PESKOE LLP  
437 Madison Avenue  
New York, New York 10022  
(212) 907-7300  
*Counsel to Aaron Muschel*

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

In re                           :          Chapter 11  
                               :          Case No. 04-13810 (JMP)  

BROADWALL AMERICA, INC.,      :

                               :

               Debtor.       :

-------------------------------------------------------------X

In re                           :          Chapter 11  
                               :          Case No. 05-10616 (JMP)  

BRAM WILL EL LLC,             :

                               :

               Debtor.       :

-------------------------------------------------------------X

In re                           :          Chapter 11  
                               :          Case No. 05-10617 (JMP)  

WILLIAM MUSCHEL, LLC,         :

                               :

               Debtor.       :

-------------------------------------------------------------X

BROADWALL AMERICA, INC.,      :          Adv. Pro. No. 06-01788 (JMP)  
                               :          Adv. Pro. No. 06-01789 (JMP)  
                  Plaintiff,       :          Adv. Pro. No. 06-01790 (JMP)  
- against -                       :

                               :

BRAM WILL EL LLC, and        :  
WILLIAM MUSCHEL, LLC         :  
               Defendants.    :

-------------------------------------------------------------X

**OBJECTION AND REQUEST FOR ADJOURNMENT BY AARON MUSCHEL TO THE JOINT MOTION FOR APPROVAL OF A PROPOSED STIPULATION AND ORDER PURSUANT TO RULE 9019(a) OF THE FEDERAL RULES OF BANKRUPTCY <u>PROCEDURE AND SECTION 105(a) OF THE BANKRUPTCY CODE</u>**

**TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:**

Aaron Muschel ("A. Muschel"), by and through his undersigned counsel,

Golenbock Eiseman Assor Bell & Peskoe LLP ("GEABP"), as and for his objection[1] and request

for adjournment to the Joint Motion for Approval of a Proposed Stipulation and Order Pursuant

to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure and Section 105(a) of the

Bankruptcy Code, dated September 20, 2010 (the "9019 Motion"), respectfully represents:

## BACKGROUND

1.      Bram Will El LLC ("Bram Will") is the owner of 734 Broadway, New

York, New York, and William Muschel, LLC ("WM LLC," and collectively with Bram Will, the

"Debtors") is the owner of 736 Broadway, New York, New York (together with 734 Broadway,

the "Properties").

2.      In 2002, the Debtors entered into a certain option contract (the "Option

Contract") with Broadwall America, Inc. ("Broadwall") whereby the Debtors would sell the

Properties to Broadwall for $13,000,000. Later that year, Broadwall brought a suit against the

Debtors in New York State court seeking a reduction in the purchase price.

3.      During the course of the litigation between Broadwall and the Debtors,

Broadwall filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code.

4.      On February 3, 2005 (the "Petition Date"), the Debtors each filed a

voluntary petition for relief under Chapter 11 the Bankruptcy Code. The Debtors continue to

operate as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

---

[1] A. Muschel recently retained GEABP, and counsel to the Debtors agreed to extend A. Muschel's objection deadline until Monday October 25, 2010 at 12:00 p.m.

5.     Upon information and belief, the Debtors filed for bankruptcy to, among other things, avoid foreclosure on the Properties by the mortgage lender, IMICO Funding, as well as maintain the status quo in their litigation with Broadwall.

6.     Upon information and belief, as of the Petition Date, Bram Will and WM LLC were owned by the decedent estate of William Muschel a/k/a Wilhelm Muschel (the "Decedent Estate"), and WM LLC was owned in four equal shares by the Decedent Estate, A. Muschel, Mordechai Muschel ("M. Muschel"), and Ruben Muschel ("R. Muschel"). A. Muschel, M. Muschel and R. Muschel are the sons of the late William Muschel, and are each executors of the Decedent Estate. Upon information and belief, under the will of William Muschel, two of the three executors may act on behalf of the Decedent Estate.

7.     As fully described in the 9019 Motion, litigation between Broadwall and the Debtors continued during the pendency of their respective bankruptcies. In 2005, the Appellate Division, First Department, State of New York issued a decision stating that Broadwall had no right to compel closing under the Option Contract. Nevertheless, on or about October 10, 2006, Broadwall brought an adversary proceeding (the "Broadwall Action") seeking to enforce the Option Contract. The Broadwall Action is proposed to be resolved as a result of the 9019 Motion.

8.     On or about June 11, 2010, the Debtors each sought to dismiss their respective bankruptcy cases (the "Dismissal Motion"). Such motions are pending, but have not been noticed for a hearing; rather, they have purportedly been adjourned to August 27, 2010. Such motion requested dismissal because the Debtors, although unable to reach a settlement with Broadwall, were willing to consent to Broadwall's enforcement of the Option Contract. (Dismissal Motion, ¶¶18-19.)

9.      On or about September 20, 2010, the Debtors each filed the 9019 Motion requesting the Court to "so order" the stipulation (the "Stipulation") attached to the 9019 Motion as Exhibit A.  Approval of the Stipulation would effectuate (i) dismissal of the Debtors' bankruptcy cases, (ii) approval the sale of all the Debtors' assets to Gary Barnett ("Barnett") or his designee, including, Extell Development Company ("Extell"), and (iii) provide mutual releases among Broadwall, Barnett, whom is the principal of Broadwall, the Debtors, the Decedent Estate, and M. Muschel individually.  As between M. Muschel and Barnett, the release would relieve a debt in the amount of $750,000 owed by M. Muschel to Barnett.  Upon information and belief, Barnett is also the principal of Extell.

## OBJECTION

### I.      The Debtors Lack Authority to Enter into the Stipulation

10.     The Stipulation recognizes that the equity interests of Debtors are property of the Decedent Estate and, accordingly, the signature of at least two executors is needed to authorize the Stipulation.

11.     However, only M. Muschel has signed the Stipulation.  As each executor individually owns a portion of WM LLC, it is at best unclear whether M. Muschel has signing authority to bind WM LLC.  It would appear that M. Muschel could only contract to sell his one-quarter interest.  In addition, M. Muschel lacks authority to bind Bram Will, which is wholly owned by the Decedent Estate and therefore requires the signature of two of the executors.  Accordingly, the Court cannot approve the Stipulation as it has not been properly authorized by the Debtors.

12.     According to paragraph 12a of the Stipulation, M. Muschel would receive title to the Properties upon the dismissal of the Debtor's bankruptcy cases. Upon information and belief, this would occur based upon an unconfirmed arbitration ruling.

13.     Thus, in addition to being unauthorized, the Court lacks jurisdiction to approve the Stipulation to the extent that the Court is being asked to approve the post-dismissal sale of the Properties by M. Muschel to Barnett or his designee.

## II. The Stipulation is Not "Fair and Equitable" or in the "Best Interest of the Estates" and thus Does Not Meet the Requirements of Rule 9019

14.     Bankruptcy Rule 9019(a), which governs approval of compromises and settlements of claims, provides, in pertinent part:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

15.     This rule empowers the bankruptcy court to approve a proposed compromise or settlement "if [it is] in the best interests of the estate." *In re Drexel Burnham Lambert Group, Inc.,* 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). Approval of a proposed compromise or settlement is within the sound discretion of the Court. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, *reh'g denied,* 391 U.S. 909 (1968); *In re W.T. Grant Co.,* 699 F.2d 599 (2d Cir.), *cert. denied sub nom., Cosoff v. Rodman,* 464 U.S. 822 (1983); *Fischer v. Pereira (In re 47-49 Charles St. Inc.),* 209 B.R. 618, 620 (S.D.N.Y. 1997).

16.     The 9019 Motion fails to adequately address the factors by which this Court should evaluate whether the Stipulation is "fair and equitable" and "in the best interest of

creditors." For example, there is no disclosure as to the number or amount of creditor claims, whether any are disputed or how the sale proceeds will be utilized. Further, the Stipulation seeks dismissal of the Debtors' bankruptcy cases and the sale of the Properties, but the 9019 Motion fails to address the applicable standards by which this Court could grant relief. As the 9019 Motion wholly fails to comport to the requirements to approve the settlement, the Court should deny the 9019 Motion or, at a minimum, adjourn the hearing to require the Debtors to supplement the 9019 Motion to address the shortfalls in both standards and evidence needed to allow the Court, and other parties-in-interest such as A. Muschel, to evaluate whether the dismissal and sale required by the Stipulation are in the best interests of the estate.

A. *The Stipulation is Neither Fair and Reasonable Nor in the Best Interest of the Estates*

17.    Although not addressed in the 9019 Motion, courts have set forth factors under which settlements are evaluated to determine if they are fair and equitable. *See In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007). Among other things, "in making such a determination, the bankruptcy court should apprise itself 'of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated' and should review 'all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.'" *In re Telcar Group, Inc.*, 363 B.R. 345, 352-53 (Bankr. E.D.N.Y. 2007) (quoting *Protective Comm. for Indep. Stockholders*, 390 U.S. at 424-25). These factors include:

a.    The balance between the likelihood of the plaintiff's or the defendant's success should the case go to trial as compared with the benefits of the settlement without the expense and delay of a trial;

b.    The prospect of a complex and protracted litigation if the settlement is not approved;

c.  The paramount interests of the creditors, including the proportion of creditors who do not object to, or who affirmatively support, the proposed settlement;

d.  Whether other parties in interest support the settlement;

e.  The competency and experience of counsel supporting the settlement;

f.  The proposed benefits to be received;

g.  The nature and breadth of releases to be issued as a result of the settlement; and

h.  The extent to which the settlement is truly the product of arms' length bargaining and not the product of fraud or collusion.

*Telcar Group, Inc.*, 363 B.R. at 352-53 (citing *In re Interstate Cigar Co., Inc.*, 240 B.R. 816, 822 (Bankr. E.D.N.Y. 1999)); *In re Iridium Operating LLC*, 478 F.3d at 462.

18.  The 9019 Motion fails to adequately address why approval of the settlement represented by the Stipulation is reasonable based on these standards. First, although the 9019 Motion addresses the pending Broadwall Action, the 9019 Motion does not discuss the relative merits of each side. A. Muschel contends that the litigation is without merit and that the Debtors have a high chance of success. This position is supported by the fact that the Debtors already had a New York State Court ruling in their favor prior to the commencement of the Broadwall Action. Yet, the 9019 Motion is silent regarding the merits of the litigation.

19.  Second, the 9019 Motion fails to address the broad releases contained within the Stipulation. Both Barnett and M. Muschel are receiving broad releases, but such releases are not even mentioned in the 9019 Motion. Third, while the 9019 Motion discusses how any disputes regarding can be determined in state court, the 9019 Motion does not address why this is more favorable than having any such dispute heard in the Bankruptcy Court.

20.     Fourth, a mere four months ago the Debtors intended to dismiss their bankruptcy cases in order to allow Broadwall to enforce its Option Contract by paying $13,000,000 for the Properties. Now, without explanation, the purchase price has fallen by $2,000,000. Adding to this concern is the fact that A. Muschel is in the possession of two letters of intent to purchase the Properties for prices of $13 million and $13.5 million respectively. These letters of intent are attached hereto as **Exhibit A.**

21.     Lastly, the facts surrounding the Stipulation suggest that the settlement may not be the result of arms-length bargaining. Part of the purchase price is Barnett's forgiveness of a $750,000 personal loan to M. Muschel. This calls into question whether the Stipulation is an arms-length transaction. Forgiving this loan provides no benefit to the Debtors but provides a substantial personal benefit to M. Muschel. This fact, coupled with the circumstances indicating that the adjusted sale price is less than the value of the Properties, raises further doubt as to whether this is an arms-length transaction.

**B.      *The 9019 Motion Fails to Set Forth "Cause" to Dismiss the Bankruptcy Cases***

22.     Although couched as a Rule 9019 motion, this motion also seeks dismissal of the Debtors' cases without addressing the applicable standards. Paragraph 3 of the Stipulation requires that the Debtors file motions to dismiss their respective bankruptcy cases in order to effectuate the Stipulation. The Debtors previously filed the Dismissal Motions, but such motions were based on different factual circumstances and are now stale. As the Debtors have not renewed their motion based on the changed factual circumstances and have not otherwise provided a basis to dismiss the Debtors' bankruptcy cases in the 9019 Motion, the Court has not been provided with the factual basis to evaluate the relief requested.

23.     In any event, the Debtors have not established sufficient "cause" to warrant dismissal of their bankruptcy cases. Section 1112(b) provides, in relevant part, the following:

> [O]n request of a party in interest and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall . . . .dismiss a case under this chapter . . . if the movant establishes cause.

11 U.S.C. § 1112(b)(1).

24.     The 9019 Motion does not address any of the listed possible causes to dismiss found in section 1112(b)(4) of the Bankruptcy Code, and also does not provide any other basis for cause. Further, although the 9019 Motion states that all claimants' rights would be preserved, the 9019 Motion fails to describe those remaining claims, and why dismissal is more beneficial than having such claims resolved in this Court. For example, upon information and belief, tax claims have accrued during the administration of the Debtors' cases, but there is no explanation as to why revenue was not sufficient to pay post-petition taxes or how the tax claims will be treated. Also, the 9019 Motion refers to pending litigation other than the Broadwall Action, but does not fully describe how such litigation would be affected by the dismissal of these cases. Lastly, the Debtors do not address any administrative costs for the Debtors' bankruptcy estates. In total, the 9019 Motion is lacking in information or basis to support dismissal of the Debtors' bankruptcy cases. Accordingly, the Court should not approval the Stipulation.

### C.     The Debtors Failed to Apply Any Type of Sales Process

25.     Even if the Court does have authority to approve the sale contained in the Stipulation, A. Muschel is concerned that the sale is below market and without a proper sale

process. Upon information and belief, there was no marketing of the Properties, even though there is evidence that the value of the Properties exceeds the purchase price in the new contract of sale.

26.     Accordingly, A. Muschel believes that the property should be properly marketed with the corresponding sale procedures in order to maximize the value to the Debtors' estates.

## III.     The Stipulation Amounts to an Impermissible "Sub Rosa" Plan

27.     Courts have disapproved of a variety of transactions because they were "sub rosa" or "creeping" plans of reorganization that needed to be approved, if at all, only after the full confirmation process. When looking at a transaction, "the degree of Court scrutiny ... must be elastic – becoming more strict and searching the nearer the transaction gets to the heart of the reorganization process." *In re CGE Shattuck, LLC*, 254 B.R. 5, 12 (Bankr. D.N.H. 2000). The seminal case is *Pension Benefit Guaranty Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 700 F.2d 935 (5th Cir. 1983) where the Fifth Circuit refused to approve a §363 sale because the sale was "in fact a reorganization." 700 F.2d. at 940. In determining the existence of a *sub rosa* plan, the Fifth Circuit disapproved of the debtor's attempt to require certain creditors to vote in favor of a later plan, which "thwarts the Code's carefully created scheme for creditor enfranchisement." *Id.* Further, the Fifth Circuit further disapproved of the §363 sale's attempt to "release claims by all parties against Braniff, its secured creditors and its officers and directors." *Id.* Accordingly, the Fifth Circuit held that the "debtor...should not be able to short circuit the requirements of Chapter 11 for confirmation of a plan by establishing the terms of the plan *sub rosa* in connection with a sale of assets." *Id.*

28.     The facts surrounding the approval of the Stipulation suggest an attempt at a "sub rosa" plan. In essence, the Court is being asked to approve the sale of the Debtors' sole assets without otherwise putting such a sale through any confirmation process. Further, the sale would leave open how the assets received from the sale should properly be distributed to the Debtors' creditors. Also, like in *Braniff*, the principals of both the buyer and the seller are receiving broad releases. Based on the factual circumstances of the case, the Court should not approve the "sub rosa" plan that is the Stipulation.

## IV.     A. Muschel's Request for Adjournment and/or Reservation of Rights

29.     As one of the executors of the Decedent Estate, A. Muschel is voicing his concerns over the manner by which the Debtors' cases are being resolved. These concerns are in part due to the limited facts provided in the 9019 Motion. Accordingly, A. Muschel requests that if the Court determines not to deny the relief sought outright, to at least adjourn the 9019 Motion to allow A. Muschel to further investigate the circumstances surrounding these matters, including expedited discovery.

30.     Further, if the Court determines to grant any of the relief sought in the 9019 Motion (i) such relief should be limited to that which is within the Court's power, and (ii) any approval order should preserve all of A. Muschel's rights to challenge any ruling made by the Rabbinical Court, including confirmation of their ruling, as well as A. Muschel's claims, rights and remedies against the Debtors, M. Muschel, Barnett, Extell, Broadwall or any other related party.

WHEREFORE, A. Muschel respectfully requests that this Court (i) deny the 9019

Motion, (ii) sustain his objection, and (iii) grant such other relief as is just.

Dated: New York, New York
      October 22, 2010

GOLENBOCK EISEMAN ASSOR BELL
  & PESKOE LLP
*Counsel to Aaron Muschel*
437 Madison Avenue
New York, New York 10022
(212) 907-7300


By    /s/ Jonathan L. Flaxer
       Jonathan L. Flaxer